IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **JEROME ANDREW BURNETT,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civ. No. MJM-24-3718 |
| v. | * | |
| | * | |
| **MARYLAND DEPARTMENT OF LABOR,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * *

## MEMORANDUM

Self-represented plaintiff Jerome Andrew Burnett ("Plaintiff") filed this civil action against the Maryland Department of Labor, Licensing, and Regulation ("DLLR") and Division of Unemployment Insurance (collectively, "Defendant") alleging violations of: his constitutional rights under the Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendments; the Maryland Constitution; the Americans with Disabilities Act ("ADA"); and various other federal statutes. ECF No. 1 at 6. This matter is before the Court on Defendant's motion to dismiss or, in the alternative, for summary judgment. ECF No. 17. Also pending are a motion for default judgment, ECF No. 19, and numerous other motions by Plaintiff seeking various—and, at times, unclear—forms of relief, ECF Nos. 11, 32, 36, 37, 39, 46, 48, 51, 53, 56, 61, 62, and 63. The motions are ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant Defendant's motion to dismiss, ECF No. 17, and deny Plaintiff's motions.

**I.     BACKGROUND**

Plaintiff filed his Complaint with this Court on December 20, 2024, asserting claims stemming from administrative decisions by the DLLR. *See generally* ECF No. 1. The challenged determination that Plaintiff owes a debt for overpaid unemployment benefits has already undergone judicial review in state court. *See* Petition of Jerome Burnett for Judicial Review of the Board of Appeals' Decision, filed in the Circuit Court for Baltimore County, Maryland, Case No. 03-C-18-008537; *Burnett v. Dep't of Lab., Licensing, & Regul.*, No. 342, Sept. Term, 2019, 2020 WL 2950716 (Md. Ct. Spec. App. June 3, 2020), *cert. denied*, 235 A.3d 33 (Md. 2020).

**A.  Administrative and State Court Proceedings**

The DLLR is a department in the executive branch of the Maryland state government and is headed by the Maryland Secretary of Labor. The Maryland Division of Unemployment Insurance resides within this department.

On or about May 29 and 30, 2013, a Division of Unemployment Insurance claims specialist determined the following: (1) Plaintiff had fraudulently procured unemployment insurance compensation benefits, contravening Maryland Code, Labor and Employment Article ("L&E") § 8-1301; (2) Plaintiff was overpaid benefits; (3) such overpayment rendered Plaintiff ineligible for benefits for one year, pursuant to L&E § 8-1305; and (4) L&E § 8-809 empowered the DLLR to recover this overpayment from Plaintiff. *See* Md. Code Ann., L&E, §§ 8-1301, 8-1305, 8-809; ECF No. 17-1 at 7.

On June 3, 2013, Plaintiff timely appealed the claims specialist's determinations, alleging issues with the web-cert system, which allegedly interfered with accurate reporting of Plaintiff's earnings and caused him to report his earnings incorrectly. ECF No. 17-4 at 43. The Division of Unemployment Insurance scheduled a telephonic hearing for July 10, 2013, and, on June 26, 2013,

mailed a notice to Plaintiff's registered home address outlining the requirement that he participate and the consequences of failure to do so. *Id.* at 44–45. Plaintiff failed to call in during the scheduled hearing. ECF No. 17-3 at 2. On July 12, 2013, the hearing examiner dismissed Plaintiff's appeal, informing him that he had seven days from the date of the decision's mailing to submit a written request to reopen the appeal. *Id.* However, Plaintiff did not seek to reopen his appeal until March 30, 2018, well over four years after the deadline. *Id.*

On April 13, 2018, a hearing examiner denied Plaintiff's petition to reopen, and, on April 16, 2018, Plaintiff appealed this decision to the Board of Appeals ("Board"). *Id.* at 2. The Board affirmed the examiner's decision, determining that Plaintiff failed to act with due diligence in his efforts to reopen the case and that the medical documentation provided did not substantiate his inability to participate in the 2013 hearing or respond in a timely manner to the dismissal order. *Id.* at 2–3; ECF No. 17-5 at 63. The Board further noted that "[o]n June 6, 2014, the claimant had previously agreed to repay $150.00 monthly" but did not fulfill this obligation. ECF No. 17-5 at 63. Plaintiff was advised to contact the Overpayment Recoveries Unit for possible remedies regarding the overpayment and accruing penalties. *Id.*

Plaintiff sought judicial review of the Board's decision in the Circuit Court for Baltimore County, Maryland, Case No. 03-C-18-008537, asking the court to (1) reverse the Board's decision denying his request to reopen previously dismissed appeals and (2) vacate the debt owed to Defendant. ECF No. 17-3 at 1. In its Memorandum Opinion and Order on April 22, 2019, the circuit court found that, in May 2013, a claims specialist determined that, between 2010 and 2013, Plaintiff fraudulently reported wages from several employers. *Id.* The circuit court found that Plaintiff presented no compelling justification to overturn the Board's decision to dismiss the appeal and that Defendant's decisions were supported by substantial evidence. *Id.* at 4. Plaintiff's

arguments, including claims of bipolar disorder and other psychological disorders, were considered but deemed insufficient to justify the reopening of the case. *Id.* The circuit court affirmed the decision to deny Plaintiff's petition to reopen and ordered Plaintiff to pay the full amount owed to the DLLR. *Id.* at 4–5.

Plaintiff then appealed to the Maryland Court of Special Appeals (now, the Appellate Court of Maryland), which upheld the circuit court's judgment in an unreported decision dated June 3, 2020. *Burnett*, 2020 WL 2950716 at *2. The appellate court noted that Plaintiff's petition to reopen was untimely because it was filed beyond the seven-day deadline after the dismissal order. *Id.* While citing a mental disorder as the reason for the delay, Plaintiff failed to provide specific evidence of how this condition affected his ability to meet the deadline or attend the hearing. *Id.* The appellate court cited the substantial evidence supporting the Board's findings regarding the Plaintiff's lack of diligence and found no errors in the denial of Plaintiff's petition. *Id.*

Ultimately, Plaintiff filed a petition for a writ of certiorari to the Court of Appeals of Maryland (now, the Supreme Court of Maryland), which was denied on August 21, 2020. *Burnett*, 235 A.3d 33 (Md. 2020).

### B. Plaintiff's Current Claims

According to the Complaint,[1] Defendant violated Plaintiff's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution by failing to provide him fair jury trial before "placing [f]raud" against his account held at the DLLR Division of Unemployment Insurance.[2] ECF No. 1 at 6. Further, the Complaint states that these actions have caused the

---

[1] On its face, the Complaint, while brief, is disjointed and generally lacking in clarity. In consideration of Plaintiff's pro se status, the Court has endeavored to construe the pleadings to the best of its ability.

[2] While apparently invoking a right to a "fair trial" and citing the Sixth Amendment, the Court does not construe the Complaint to allege that Plaintiff was ever charged with or convicted of criminal fraud or any other criminal offense. No facts are alleged to suggest any violation of the Sixth Amendment.

4

Comptroller of Maryland to "illegally 'tax intercept'" an amount ranging between $300 and $500. *Id.* Plaintiff claims that the fraud alleged against him has caused interest to be assessed illegally and that a notice of outstanding debt issued by the Comptroller of Maryland is "proof of the ongoing Unconstitutional behavior and the Coercion by the Central Collection Unit of the State of Maryland . . . ." *Id.*; *see also* ECF 1-1. The Complaint states that Plaintiff "appealed the illegal decision" to the Circuit Court for Baltimore County, Maryland, but that the court decided to uphold the "illegal" decision and deny Plaintiff relief. ECF No. 1 at 6. The Complaint claims that these decisions violate both the state judges' and State Attorney's oaths under the Constitution of Maryland. *Id.* The Complaint proceeds to list various constitutional and statutory provisions Plaintiff apparently asserts Defendant violated. *Id.* Additional laws are cited in attachments and supplements to the Complaint. *See* ECF Nos. 7, 7-1, 28, 31, 34. Plaintiff seeks monetary relief in the total amount of $1,721,400,000. ECF No. 1 at 7.

### C. Procedural Background

On December 20, 2024, Plaintiff filed the instant Complaint with a motion for leave to proceed in forma pauperis. ECF Nos. 1, 2. On January 3, 2025, the Court granted Plaintiff leave to proceed in forma pauperis. ECF No. 6. On January 16, 2025, Plaintiff filed a supplement to his Complaint. ECF No. 7. On March 28, 2025, Defendant filed a motion to dismiss, or in the alternative, motion for summary judgement, ECF No. 17, and Plaintiff filed a response in opposition on March 31, 2025, ECF No. 21. On March 28, 2025, Plaintiff filed a request for entry of default and a motion for default judgement, ECF Nos. 19, 20, to which Defendant filed a response in opposition, ECF No. 22, and Plaintiff filed a reply, ECF No. 25. Plaintiff also filed additional purported supplements to his Complaint. ECF Nos. 28, 31, 34. Also pending are

numerous subsequent motions and other filings by Plaintiff. ECF Nos. 32, 36, 37, 39, 46, 48, 51, 53, 56, 61, 62, and 63.

## II.   PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

On March 28, 2025, Plaintiff both requested entry of default and filed a motion for default judgment against Defendant, ECF Nos. 19, 20, and, on the same date, Defendant filed a motion to dismiss the case for insufficient service of process, lack of subject matter jurisdiction, and failure to state a claim, ECF No. 17. Plaintiff's motion for default judgment states that Plaintiff "relies upon the record in this case" and an affidavit claiming that Defendant failed to make a timely response to the Complaint. ECF No. 19 at 1; ECF No. 19-2. Defendant opposes the motion, arguing that it was never properly served process in this case and that it filed a timely motion to dismiss in response to the Complaint. ECF No. 22, ¶ 3; *see also* ECF 17-1 at 11–16.

In their respective motions, the parties dispute whether Defendant was properly served and whether Defendant made a timely response to this suit. Rule 12(a) of the Federal Rules of Civil Procedure provides that a defendant must serve an answer to a civil compliant "within 21 days after being served with the summons and complaint[.]" Fed. R. Civ. P. 12(a)(1)(A)(i). Rule 12(b) provides that a defendant may assert insufficient service of process, lack of subject matter jurisdiction, and failure to state a claim for relief as defenses by motion before filing a responsive pleading. Fed. R. Civ. P. 12(b). The case record reflects that attempts to serve the Maryland Attorney General occurred in January and February 2025, but leaves unclear whether service was effective and whether the process was sufficient. *See* ECF Nos. 14, 15.

The Court need not resolve these disputes to conclude that entry of default judgment would be improper in the circumstances of this case. "For a plaintiff to obtain a default judgment, Rule 55 [of the Federal Rules of Civil Procedure] sets forth a two-step process that first requires the

6

entry of a default by the clerk or the court under Rule 55(a) and then entry of a default judgment under Rule 55(b)." *Amerifactors Fin. Grp., LLC v. PHD Tech. Sols., LLC*, Civ. No. RDB-19-0207, 2019 WL 2579349, at *1 (D. Md. June 24, 2019). Rule 55(a), governing the entry of default, states: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once a default is entered, under Rule 55(b)(1), the clerk may enter a default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Here, no default had been entered against Defendant at the time Defendant filed its Rule 12(b) motion and at the time Plaintiff moved for default judgment under Rule 55(b).

Importantly, the U.S. Court of Appeals for the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). It would be improper for the Court to dispose of this case by default because, even assuming that Defendant was properly served, Defendant has filed a Rule 12(b) motion that was not so untimely as to prejudice Plaintiff or cause undue delay. ECF No. 17. Plaintiff had a full opportunity to oppose Defendant's Rule 12(b) motion and did file a written opposition. ECF No. 21. Since that time, Defendant has fully and actively participated in this litigation. In short, Defendant has not "failed to . . . defend" against Plaintiff's claims in this case. Fed. R. Civ. P. 55(a). Accordingly, the Court shall dispose of this case on its merits rather than by default, and Plaintiff's motion for default judgment shall be denied.

### III. DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant moves to dismiss the Complaint or, alternatively, for entry of summary judgment in its favor. ECF Nos. 17, 17-1. Defendant argues, in part, that the Complaint is subject to dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon relief may be granted. ECF No. 17 at 1; ECF No. 17-1 at 16–29. Plaintiff opposes the motion. ECF No. 21. For the reasons explained below, the Court shall grant the motion

### A. Standard of Review

#### 1. Rule 12(b)(1)

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed in one of two ways: either a facial challenge . . . or a factual challenge." *Id.* (internal quotations marks and citations omitted). A facial challenge "assert[s] that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A defendant's facial challenge "will be evaluated in accordance with the procedural protections afforded under Rule 12(b)(6), which is to say that the facts alleged in the Complaint will be taken as true . . . ." *Est. of Jones v. Md. Dept. of Pub. Safety*, Civ. No. JRR-21-01889, 2024 WL 493269 at *2 (D. Md. Feb. 8, 2024) (citing *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009); and *Trump*, 416 F. Supp. 3d at 480). A factual challenge, on the other hand, asserts "that the jurisdictional allegations of the complaint are not true." *Trump*, 416 F. Supp. 3d at 479 (cleaned up) (quoting *Kerns*, 585 F.3d at 192). In a factual challenge, the court "is entitled

8

to decide disputed issues of fact with respect to subject matter jurisdiction. . . . In that circumstance, the court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (internal quotation marks and citations omitted).

### 2. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Ordinarily, "a court is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, courts may "consider documents that are explicitly incorporated into the complaint by reference" or "document[s] submitted by the movant" that are "integral to the complaint" if "there is no dispute about the document's authenticity." *Goines v. Valley Cmty.*

*Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). Additionally, "courts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 503 (D. Md. 2019); *see also Corbitt v. Baltimore City Police Dep't*, 675 F. Supp. 3d 578, 583 n.5 (D. Md. 2023) ("On a motion to dismiss, a court may take judicial notice of matters of public record.") (citation omitted).

"[P]*ro se* filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must "construe [pro se] pleadings liberally." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff'"; rather, the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King*, 825 F.3d at 212, 214) (internal quotation marks omitted). Ordinarily, "a court is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

### B. Eleventh Amendment Immunity

Defendant argues that it is immune from this suit under the Eleventh Amendment to the U.S. Constitution. ECF No. 17-1 at 17–20.

Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Amison v. George Mason*

*Univ.*, No. 23-1042, 2023 WL 8946774, at *2 (4th Cir. Dec. 28, 2023) (per curiam) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). "[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code, State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 632 (D. Md. 2020); *see also Lawson v. Union Cnty. Clerk of Ct.*, 828 F.3d 239, 250 (4th Cir. 2016) (citations omitted) (states and state agencies alike are protected from federal suit by the Eleventh Amendment).

The DLLR, as a principal department of the Maryland state government, *see* Md. Code Ann., Bus. Reg., § 2-101, is generally immune from suit in federal court under the Eleventh Amendment. Plaintiff cites no legal authority establishing any applicable consent to Plaintiff's suit by the DLLR or the Maryland state government. Accordingly, Plaintiff's Complaint is subject to dismissal for lack of subject matter jurisdiction.

### C. Res Judicata

In addition, Defendant argues that Plaintiff's claims are barred by the doctrine of res judicata, citing the prior proceedings and final judgment in state court. ECF No. 17-1 at 22.

"Res judicata or claim preclusion bars a party from suing on a claim that has already been 'litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action.'" *Ohio Valley Env't Coal v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (quoting 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.10(1)(a) (3d ed. 2008)). Dismissal

11

with prejudice is the appropriate disposition when a plaintiff's claims are barred by res judicata. *See Reid v. New Century Mortg. Corp.*, Civ. No. PX-18-233, 2018 WL 4538585, at *6 (D. Md. Sept. 20, 2018); *Tall v. P'ship Dev. Grp., Inc*, Civ. No. RDB-15-3352, 2016 WL 1696466, at *7 (D. Md. Apr. 28, 2016); *Beatty v. BAC Home Loans Servicing, LP*, Civ. No. RDB 12-3188, 2013 WL 3868098, at *3 (D. Md. July 24, 2013); *Christopher v. St. Vincent De Paul of Baltimore, Inc.*, Civ. No. RDB-14-3184, 2015 WL 3745025, at *6 (D. Md. June 11, 2015), *aff'd*, 631 F. App'x 138 (4th Cir. 2016).

Because "federal court[s] must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984), the preclusive effect in this matter is determined by Maryland law. Under Maryland law, res judicata provides grounds for dismissal if a defendant establishes that: "(1) the parties in the present litigation are the same or in privity with the parties to the earlier action; (2) the claim in the current action is identical to the one determined in the prior adjudication; and (3) there was a final judgment on the merits in the previous action." *Bank of N.Y. Mellon v. Georg*, 175 A.3d 720, 725 (Md. 2017). A claim is "identical" to an earlier one if the second suit arises out of the same transaction or series of transactions as the earlier claim. *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. Ct. Spec. App. 2002) (citing *FWB Bank v. Richman*, 731 A.2d 916, 928 (Md. 1999)).

Maryland courts "bar[] not only claims from the original litigation, but also other claims that *could have been brought* in the original litigation." *Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 683 (D. Md. 2018) (emphasis added) (citation omitted); *see also Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) ("Not only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that

were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.") (alteration in original omitted) (quoting *Peugeot Motors of Am., Inc. v. E. Auto Distrib., Inc.*, 892 F.2d 355, 359 (4th Cir. 1989)).

The Court finds that each element of res judicata is satisfied with respect to Plaintiff's claims challenging the DLLR's administrative decisions that he was overpaid unemployment benefits and owes a debt equivalent to the overpaid benefits. First, the parties to the present litigation are the same as those in the prior state court proceedings. Plaintiff was the petitioner who filed the petition for judicial review that was adjudicated in state court, and the DLLR was the respondent agency that filed an answer to Plaintiff's petition. Second, in the state court litigation, Plaintiff sought relief from decisions made by a claims specialist, a hearing examiner, and the Board of Appeals within the DLLR that Plaintiff was overpaid unemployment benefits and owed the amount overpaid to the state government. Any challenge Plaintiff makes to these decisions in the instant case are either identical to the challenge raised in the prior state court litigation or could have been raised in the prior litigation. Third, the Maryland circuit court made a final decision on the merits of Plaintiff's challenge to the DLLR's decisions, the court's decision was affirmed on appeal, and Plaintiff's petition for a writ of certiorari was denied by the highest court in Maryland.

Accordingly, any claims Plaintiff makes here challenging the DLLR's determinations that he was overpaid unemployment benefits and incurred a debt in the amount overpaid are barred by the doctrine of res judicata and must be dismissed with prejudice.

### D. Rooker-Feldman Doctrine

Defendant further argues that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. ECF No. 17-1 at 20–21.

The *Rooker-Feldman* doctrine prevents lower federal courts from exercising appellate jurisdiction or review over the final decisions of state court judgements. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This doctrine occupies a "narrow" ground. *Id.* It "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *T.M. v. Univ. of Maryland Med. Sys. Corp.*, 139 F.4th 344, 349 (4th Cir. 2025) (quoting *Exxon Mobil*, 544 U.S. at 284).

The *Rooker-Feldman* doctrine applies here to bar Plaintiff's claims insofar as they seek review and reversal of the judgments entered by the state courts in the prior litigation. Plaintiff was the losing party to the earlier proceedings in state court challenging the DLLR's administrative decisions that Plaintiff was overpaid unemployment benefits and owed the DLLR the overpaid amount. Both the Maryland Circuit Court for Baltimore County and the Maryland Court of Special Appeals affirmed the denial of Plaintiff's petition to reopen and affirmed Plaintiff's obligation to pay the debt, and the Maryland Court of Appeals denied Plaintiff's petition for a writ of certiorari. It is not clear from the Complaint whether Plaintiff is asking this Court to review the state courts' judgments or claiming injuries based on those judgments in themselves. The Complaint does not specifically state that Plaintiff is seeking anything akin to appellate review of the state court judgments. But the Complaint does call the judgment of the Circuit Court for Baltimore County an "illegal decision" and oppose the appellate court's decision to uphold that judgment. ECF No. 1 at 6. It goes on to make passing reference to an alleged violation of the state judges' oaths of office. *Id.* Insofar as Plaintiff seeks review of, and relief from, the judgments of the state courts in the prior litigation, the Court finds any such claim to be barred by the *Rooker-Feldman* doctrine and dismisses any such claim with prejudice.

### E. Failure to State a Claim

Next, Defendant argues that the Complaint must be dismissed for failure to state a claim for relief. As previously noted, Plaintiff's pleadings are brief and not a model of clarity. Plaintiff's Complaint states that Defendant's decisions were "illegal" and cites various legal provisions Plaintiff contends that Defendant violated. The Complaint does not offer any facts or explanation to support a reasonable inference that Defendant is liable for the various constitutional and statutory violations Plaintiff alleges. *See generally* ECF Nos. 1, 7.

In the Complaint, Plaintiff alleges that the DLLR "plac[ed] [f]raud against" Plaintiff's DLLR account and that his outstanding debt from the overpayment of unemployment benefits was "illegally" applied to a state tax refund. *See* ECF No. 1 at 6. Plaintiff fails to offer any explanation of how any of the various legal provisions listed in the Complaint and its supplements were violated by either the DLLR's decisions or the Comptroller's action applying the debt determined by the DLLR to a tax refund.

In a supplement to the Complaint Plaintiff filed in April 2025, Plaintiff states that the DLLR "plac[ing] 'fraud'" on his DLLR account resulted in some unspecified deprivation of access to services, programs, and activities provided by the DLLR, and he claims this conduct violated the ADA. ECF No. 31. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prevail on a claim of disability discrimination under Title II, a plaintiff must show that he: (1) has a disability or is regarded as having a disability; (2) is qualified to participate in or to receive the benefits of a public service, program, or activity; and (3) was denied such participation or benefits, "or otherwise discriminated against," based on his

15

disability. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir. 2016); *see also Cartagena v. Lovell*, 103 F.4th 171, 184 (4th Cir. 2024). In addition, a state government's Eleventh Amendment immunity from suit in federal court is abrogated under Title II of the ADA insofar as the conduct alleged to violate Title II "*actually* violates the Fourteenth Amendment" of the U.S. Constitution. *Fauconier v. Clarke*, 966 F.3d 265, 280 (4th Cir. 2020) (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)).[3]

Here, Plaintiff identifies no service, program, or activity of the DLLR or the Division of Unemployment Insurance to which he was denied access, and he alleges no facts to suggest any discriminatory conduct by Defendant or conduct by Defendant that violated the Fourteenth Amendment.[4] Even if the Court construed the Complaint so liberally as to assume that Plaintiff intended to claim he was wrongfully denied unemployment benefits, he pleads no facts to support a reasonable inference that he was denied such benefits based on his disability. Accordingly, this Court finds the Complaint and its supplements inadequate to state a plausible claim of disability discrimination under Title II of the ADA.

The Complaint cites various other state and federal statutes Plaintiff contends that Defendant violated but offers no facts to support any reasonable inference that any such violations occurred or that they entitle Plaintiff to the monetary relief he seeks. *See Iqbal*, 556 U.S. at 678

---

[3] Congress is empowered by § 5 of the Fourteenth Amendment to abrogate state sovereign immunity, so long as the means are congruent and proportional to the injuries that Congress intends to prevent or remedy. *Allen v. Cooper*, 589 U.S. 248, 260–61 (2020) (citing *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)). "Title II [of the ADA] authorizes suits by private citizens for money damages against public entities that violate [42 U.S.C.] § 12132." *Georgia*, 546 U.S. at 154. "In enacting Title II of the ADA, Congress made it specifically applicable to the States and state entities . . . ." *Fauconier*, 966 F.3d at 280.

[4] Additionally, Plaintiff does not specifically allege in the Complaint that he has any disability. However, the Court understands from matters of public record and other materials filed in this case that Plaintiff has certain diagnoses for mental disorders, *see, e.g.*, *Burnett*, 2020 WL 2950716 at *1 (describing documentation of Plaintiff's mental disorders), which may qualify as disabilities for purposes of an ADA claim.

("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 555, 557). For instance, the Complaint lists Title V of the ADA and states simply, "Coercion to pay illegal fines . . . ." ECF No. 1 at 6. Title V of the ADA provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]." 42 U.S.C. § 12203. But the Complaint presents no facts to suggest that the debt noted by the DLLR or any "fine[]" imposed upon Plaintiff was imposed to coerce, interfere with, or retaliate against any exercise of Plaintiff's rights under the ADA.

Separately, the Complaint lists 18 U.S.C. § 1341 among the litany of federal statutes Plaintiff claims Defendant violated, but § 1341 is a criminal statute defining the offense of mail fraud. Any civil claim based upon this criminal statute must be dismissed because the statute, while enforceable by the federal government, does not provide a private cause of action. *See Jones v. Luthi*, 586 F. Supp. 2d 595, 602, 616 (D.S.C. 2008), *aff'd*, 324 F. App'x 253 (4th Cir. 2009) (no private cause of action under mail or wire fraud statutes).

The Complaint and its supplements also list various constitutional provisions as grounds for his claims. The only apparent statutory basis for any claims for monetary relief asserted in the Complaint for any alleged federal constitutional violations is 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws" of the United States. 42 U.S.C. § 1983. Plaintiff's claims for violations of the U.S. Constitution are subject to dismissal because Defendant is not a "person" and therefore cannot be liable under § 1983. *See, e.g.*, *Gregory v. Currituck Cnty.*, No. 21-1363, 2022 WL 1598961, at *2 (4th Cir. May 20, 2022) (per curiam) ("[C]laims for damages brought under § 1983 can only be brought against 'persons' acting under color of state law, and neither states nor state officials acting in their official capacities are considered 'persons' under § 1983.") (citing *Hafer v. Melo*, 502 U.S. 21, 26 (1991)). To the contrary, Defendant is a state governmental entity and immune from any claims for monetary damages brought under § 1983. *See Quern v. Jordan*, 440 U.S. 332, 338–45 (1979) (holding that § 1983 does not abrogate states' Eleventh Amendment immunity); *Pennhurst State Sch. and Hosp.*, 465 U.S. at 120 ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim."). Therefore, Plaintiff's constitutional claims for monetary relief against Defendant must be dismissed.

For the foregoing reasons, Defendant's motion to dismiss shall be granted, and the Complaint is dismissed.

### IV.   PLAINTIFF'S REMAINING MOTIONS

Plaintiff has filed a number of other motions and documents in this case seeking various—and, at times, entirely unclear—forms of relief. Some of Plaintiff's filings lodge "objections" to Defendant's motion to dismiss without any legal basis, and others seek certified notice to the U.S. Attorney General questioning the constitutionality of unspecified statutes. Other filings appear to be efforts toward perfecting service of process—a matter this Court finds to be moot given the failure of the Complaint to state a claim over which this Court has subject matter jurisdiction, for reasons explained in Part III *supra*. These motions shall be denied.

Other motions filed by Plaintiff appear to seek a finding of contempt against attorneys representing Defendant in this matter and disqualification of Defendant's counsel, apparently based on generalized and unsubstantiated accusations of "bad faith," perjury, and other misconduct. Plaintiff offers no evidence that any attorney representing Defendant made any filings in bad faith or has engaged in perjury or any other form of misconduct that might warrant a contempt finding. The Court also understands that Plaintiff has separately engaged in email communications with the DLLR's counsel containing similar baseless accusations. Plaintiff is admonished to avoid making such serious accusations without evidence or cause. His various motions for contempt lack any legal or factual merit and shall be denied.

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, or in the alternative, for summary judgment shall be GRANTED. Any claims challenging the DLLR's administrative decision that Plaintiff owes the state government in the amount of overpaid unemployment benefits, and any claims seeking review and reversal of state court judgments affirming that determination, are dismissed with prejudice. Any other claims asserted in the Complaint are dismissed without prejudice. Plaintiff's motions are denied.

A separate Order will follow.

  9/24/25                                                          /S/                           
Date                                                        Matthew J. Maddox
                                                            United States District Judge